# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| PNY TECHNOLOGIES, INC. | Civil Action No. 13-6799 (SRC) |
| Plaintiff, | |
| v. | **OPINION & ORDER** |
| NETAC TECHNOLOGY CO., LTD., | |
| Defendant. | |

**CHESLER, District Judge**

This matter has come before the Court on the motion to confirm the arbitration award by Defendant Netac Technology Co., Ltd. ("Netac"), and the cross-motion to vacate the arbitration award or stay confirmation by Plaintiff PNY Technologies, Inc. ("PNY"). For the reasons that follow, the motion to confirm will be granted, and the motion to vacate will be denied.

Previously, this Court granted in part Netac's motion to compel arbitration. The parties completed an arbitration process and, on July 27, 2018, the Arbitrator issued the Final Award. Netac now moves to confirm the Final Award, and PNY cross-moves to vacate it.

PNY contends that a portion of the Final Award should be vacated and modified to exclude an award of $2.2 million in royalties on a set of products that is the subject of a dispute (the "Disputed Units.") The parties dispute whether the Disputed Units are COB products, not subject to royalties, or PCBA products, subject to royalties. The Arbitrator ruled that the Disputed Units are PCBA products, subject to royalties, and awarded $2.2 million in royalties. (Dickey Dec. Ex. H at 6-8.)

PNY argues that the Arbitrator's basis for the award of $2.2 million is "completely irrational and not supported by the record." (Pl.'s Opp. Br. 10.) PNY states:

> The decision is inherently irrational because it directly contradicts Arbitrator Bassler's earlier, agreed-upon ruling that COB units were not licensed or royalty-bearing under the Settlement Agreement. The Arbitrator also lacked any support in the record to determine that the units at issue were in fact royalty-bearing PCBA units and not royalty-free COB units.

(Pl.'s Opp. Br. 11.)

Plaintiffs have misread the Final Award, which does not support either of their two assertions: 1) the Final Award contradicts the earlier ruling by the Arbitrator; and 2) the Arbitrator's determination that the Disputed Units are PCBA products has no basis in the evidence of record.

As to the first assertion, there is no dispute that the Arbitrator had previously ruled that COB products are not subject to royalties. PNY attempts to style the Final Award as doing a 180º turn, relying on the contrary proposition that COB products are subject to royalties, but this is an incorrect reading. The very first sentence of the section of the Final Award at issue states: "I previously determined that PCBA products, not COB products, generate royalties." (Dickey Dec. Ex. H at 6.) Nothing in the section that follows contradicts that statement. There is simply no basis for PNY's contention that the Arbitrator reversed himself on this basic point. Instead, the Arbitrator examined the evidence and made a factual determination that the Disputed Units are PCBA products, subject to royalties. (Id. at 7.) PNY has failed to persuade this Court that the Final Award of $2.2 million for the Disputed Units contradicts any of the Arbitrator's previous decisions.

As to the second assertion, again, it is not supported by the Final Award. The Arbitrator

explained the issue as follows:

> I previously determined that PCBA products, not COB products, generate royalties. PNY argues Netac is not entitled to $2,214,000.00 in royalties for COB units that PNY alleges have been wrongly categorized as PCBA products. PNY contends that the many technical distinctions between the PCBA and COB products preclude Netac from trying to characterize any COB products as PCBA ones. PNY argues, based on supply data, that the units in question cannot be PCBA units. PNY argues the evidence is insufficient to find that PNY sold PCBA products sufficient to generate $2.24 million in royalties because the supply records are more reliable than the sales records and the supply figures cannot support the sales figures. According to PNY, the PCBA royalties should not include $2.2 million because the supply data shows fewer PCBA products than are recorded in the PNY sales data, and the supply data is the more accurate way to calculate royalties.
>
> Netac, on the other hand, argues that royalties are due for these products because PNY's own sales receipts and business records use the PCBA coding numbers for what PNY itself says is COB product. As Netac points out, the PCBA sales data that PNY produced to Netac was relied upon both at the evidentiary hearing and by the parties' experts and demonstrates the units in question are PCBA products and thus are royalty-bearing.

(Dickey Dec. Ex. H at 6.) There is more to the decision, but this section by itself demonstrates that PNY is incorrect in its assertion that the "Arbitrator also lacked any support in the record to determine that the units at issue were in fact royalty-bearing PCBA units and not royalty-free COB units." (Pl.'s Opp. Br. 11.) As the section just quoted makes clear, the Arbitrator relied on PNY's sales data. His decision has a basis in evidence of record. Furthermore, the Arbitrator went on to explain that PNY and its expert had previously relied on the sales records, and that PNY had now changed its position, arguing that its own sales records were erroneous. The Arbitrator decided that there was no basis to conclude that PNY's sales records were erroneous, and that these records supported the award of $2.2 million.

The parties agree on the very limited scope of judicial review of arbitration awards: "if an examination of the record before the arbitrator reveals no support whatever for his

determinations, his award must be vacated." NF&M Corp. v. United Steelworkers of Am., 524 F.2d 756, 760 (3d Cir. 1975). While PNY has argued that the record reveals no support for the decision to award $2.2 million for the Disputed Units, the record does not support this assertion. This Court finds no basis to upset the award of royalties for the Disputed Units.

PNY next opposes the motion to confirm on the ground that the Arbitrator manifestly disregarded the law when he concluded "that the royalty reports and payments under the Settlement Agreement shall continue to be made consistent with the provisions of the Settlement Agreement." (Dickey Dec. Ex. H at 10.) PNY argues that the Arbitrator did not have the authority to grant Netac perpetual injunctive relief. PNY contends that this Court Ordered arbitration of the claims at issue in the present action, and that there is no claim or counterclaim which seeks ongoing injunctive relief.

PNY's position is unpersuasive. Count I of the Complaint carries this subtitle: "Declaratory Judgment that Royalties are Not Due Under the Settlement Agreement for COB Products." (Compl. at 9.) The Arbitrator concluded that royalties *are* due under the Settlement Agreement for the Disputed Units. The determination that PNY characterizes as "perpetual injunctive relief" is a straightforward declaration of the parties' rights and obligations under the Settlement Agreement. The Arbitrator did not grant a perpetual injunction, and calling the Arbitrator's declaration of the parties' rights and obligations a perpetual injunction does not make it one. The Arbitrator was asked by this Court to determine the parties' rights and obligations under the Settlement Agreement, and that is what he did.

Royalty reporting obligations come within the scope of the dispute referred to arbitration. Paragraph 9 of the Settlement Agreement requires PNY to submit royalty reports with royalty

4

payments. Paragraph 12 requires the parties to resolve any disputes over breach of the Agreement with the Arbitrator. The plain language of the Settlement Agreement shows that the parties agreed to resolve disputes over breach of the royalty reporting provision through arbitration. The Arbitrator's resolution of the dispute over royalty reporting was proper under the arbitration provision of the Settlement Agreement.

Furthermore, while it is true that Count I in the Complaint focuses on royalties and does not mention reporting, the prayer for relief that follows the counterclaims seeks "royalty reports." (Answer and Ctrclms. at 32.) This Court referred the parties' dispute over royalties to arbitration, which includes all claims and counterclaims regarding royalties. The Arbitrator was authorized to determine the parties' rights and obligations under the Settlement Agreement with regard to royalty reports.

PNY also argues that the Arbitrator, in determining that PNY must pay royalties during the pendency of its litigation over Netac's patents, manifestly disregarded the law. PNY quotes Lear, Inc. v. Adkins, 395 U.S. 653, 673 (1969), which held that a licensee cannot "be required to comply with its contract and continue to pay royalties until its claim is finally vindicated in the courts." As Netac points out, PNY has both misread Lear and failed to see the crucial differences in the instant case. In the instant case, paragraph 4 of the Settlement Agreement grants to PNY "a license under the '672 Patent *and any other patents of Netac covering flash drives or MP3/MP4 players now in existence, and their counterparts in China, Korea, Singapore, Taiwan and Hong Kong, and continuations thereof*" (italics added). The Settlement Agreement thus covers multiple patents, including foreign patents. There is nothing in either Lear or in the Settlement Agreement that indicates that litigation over one patent allows a

5

licensee to withhold royalties on every patent in a multi-patent license. Rather, as Netac argues, the Supreme Court made this clear in Kimble v. Marvel Entm't, LLC, 135 S. Ct. 2401, 2408 (2015):

> And parties have still more options when a licensing agreement covers either multiple patents or additional non-patent rights. Under *Brulotte*, royalties may run until the latest-running patent covered in the parties' agreement expires.

The Settlement Agreement is a licensing agreement which covers multiple patents. Under Kimble and Brulotte, "royalties may run until the latest-running patent covered in the parties' agreement expires."[1] Id. The Arbitrator's decision is completely consistent with the law; the Arbitrator did not disregard the law.

Lastly, PNY cross-moves to stay confirmation of the arbitration award until resolution of a related case, Civil Action No. 18-7932, in which PNY disputes the validity of the Settlement Agreement. PNY vaguely argues that a stay would promote efficient use of the Court's resources. This Court sees no efficiency in delaying the resolution of the instant motion. The parties have fully and fairly litigated the motion to confirm the arbitration award, and the motion is ready for a decision. Delaying a decision that is ready to be made does not promote efficiency.

The motion to confirm the arbitration award will be granted. The cross-motion to vacate or stay confirmation of the arbitration award will be denied.

For these reasons,

---

[1] As Netac points out in a footnote, PNY might have relied on Lear to withhold royalty payments on the two U.S. patents it has challenged, but for the fact that the products at issue are manufactured in foreign countries under the protection of foreign patents. (Def.'s Reply Br. 18 n.7.)

**IT IS** on this 6th day of February, 2019,

**ORDERED** that Netac's motion to confirm the arbitration award (Docket Entry No. 163) is **GRANTED**, and the Final Award dated July 27, 2018 is hereby **CONFIRMED**; and it is further

**ORDERED** that PNY's cross-motion to vacate or stay confirmation of the arbitration award (Docket Entry No. 182) is **DENIED.**

                                                                  s/ Stanley R. Chesler
                                                                 Stanley R. Chesler, U.S.D.J